# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 15-171-1** |
| | : | |
| | : | |
| **KEONNA THOMAS** | : | |

# O R D E R

**AND NOW**, this _____ day of _____ 2015, in consideration of the Defendant's Motion to Dismiss the Indictment, and the government's response thereto, it is hereby

**ORDERED** that said Motion is **GRANTED**.

BY THE COURT:

_____
**THE HONORABLE MICHAEL M. BAYLSON**
**Senior United States District Court Judge**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| V. | : | **CRIMINAL NUMBER 15-171-1** |
| | : | |
| **KEONNA THOMAS** | : | |

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Defendant Keonna Thomas, by and though her counsel, and pursuant to Federal Rules of Criminal Procedure 7(c) and 12(b), and the First and Fifth Amendments of the United States Constitution, respectfully moves for an Order dismissing the government's indictment. In support of this Motion, Ms. Thomas relies upon and incorporates by reference the accompanying Memorandum of Law.

Respectfully submitted,

/s/ *Kathleen M. Gaughan*
KATHLEEN M. GAUGHAN
Assistant Federal Defender

ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| V. | : | CRIMINAL NUMBER 15-171-1 |
| | : | |
| | : | |
| KEONNA THOMAS | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Keonna Thomas is charged with attempted provision of material support and resources to the Islamic State of Iraq and the Levant ("ISIL")[1], with the knowledge that ISIL was a designated foreign terrorist organization ("FTO"), and/or engaged in terrorist activity or terrorism, in violation of 18 U.S.C. § 2339B. The material support at issue in this case is in the form of "personnel," namely, Ms. Thomas herself. The government's case appears to be that Ms. Thomas planned and attempted to travel to the Islamic state to join ISIL.

The provision of material support in the form of personnel is prohibited by § 2339B only when an individual knowingly attempts to "work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization." 18 U.S.C. § 2339B(h). The statute does not prohibit, however, independent advocacy or mere

---

[1] ISIL is a "predominantly Sunni jihadist group" that seeks to control the territory in the "region spanning from southern Turkey to Egypt and including Syria, Lebanon, Israel, the Palestinian territories and Jordan . . . with the aim of establishing a caliphate – a single, transnational Islamic state governed by sharia law." Zachary Laub and Jonathan Masters, Background Briefing: What is ISIL?, PBS (June 24, 2014, 12:05 PM), http://www.pbs.org/newshour/rundown/what-is-islamic-state-iraq-and-syria/. Indeed, in June 2014, ISIL "proclaimed itself a caliphate, claiming exclusive political and theological authority over the world's Muslims." Zachary Laub and Jonathan Masters, The Islamic State, Council on Foreign Relationships (May 18, 2015), http://www.cfr.org/iraq/islamic-state/p14811. The indictment refers to the FTO as the Islamic State of Iraq and the Levant. This group is commonly known by its acronyms, "ISIL" and "ISIS." Both acronyms will be used interchangeably through this memorandum.

membership of ISIL. Id.; see also Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2730 (2010).

As applied to Ms. Thomas, the material support statute is void for vagueness, unconstitutional, and overbroad. A statute is void for vagueness when it does not give an individual adequate notice of what conduct is prohibited, or permits arbitrary enforcement. In this case, the definition of "personnel" in the material support statute is unclear and impermissibly vague. When the FTO controls a wide swath of territory where an individual might travel – including the states of legitimate governments – control by the FTO is inherent in an individual's mere presence. Where presence effectively becomes support, the material support statute unconstitutionally infringes upon and criminalizes protected First Amendment activity, such as freedom of expression and association. Under these circumstances, a citizen of reasonable intelligence is not put on notice that independent advocacy and mere travel would bring her within the purview of the material support statute.

Similarly, the material support statute is unconstitutional because, as applied in this case, it violates Ms. Thomas's First Amendment rights by criminalizing her constitutionally-protected expressive activity. Ms. Thomas possesses the right to speak freely on any topic and associate with others for the purpose exercising her religion freely. Section 2339B impermissibly tramples on those rights and transforms expression into conduct in the form of material support.

The material support statute also is overbroad because it brings within its scope a substantial amount of protected rights of speech and association. As discussed more fully below, section 2339B should be invalidated on overbreadth grounds because, among other things, it limits a citizen's right to travel, speak freely on the topic of FTOs and their goals, and associate with members of an FTO.

Finally, the indictment fails to allege essential elements of the offense under section 2339B. The indictment does not allege that Ms. Thomas knew that ISIL was a designated terrorist organization, in violation of the Sixth Amendment and Federal Rule of Criminal Procedure 7(c)(1).

## I. STATUTORY FRAMEWORK

In 1996, Congress passed into law the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which established § 2339B. Pub. L. No. 104-132, 110 Stat. 1214 (1996). The purpose of the anti-terrorism portion of the Act is to "provide the Federal Government the fullest possible basis, consistent with the Constitution, to prevent persons within the United States . . . from providing material support or resources to foreign organizations that engage in terrorist activities." Pub. L. No. 104-132, 110 Stat. 1214, 1248. Section 2339B makes it a federal crime to provide material support and resources to an FTO. In its current form, §2339B provides:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and if the death of any person results, shall be imprisoned for any term of years or for life.

18 U.S.C. § 2339B(a)(1). The term "material support or resources" means

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

18 U.S.C. § 2339A(b). Congress amended AEDPA in December 2004 when it passed the Intelligence Reform and Terrorism Prevention Act ("IRTPA"). Pub. L. No. 108-458, 118 Stat. 3638 (2004). IRTPA amended the material support statute in two ways which bear on the instant

3

motion. The definition of "material support" was modified, as set forth above. IRTPA also added a mens rea requirement to § 2339B. A person violates the amended statute if she provides material support or resources to an FTO with the knowledge that (1) "the organization is a designated terrorist organization," (2) "the organization has engaged or engages in terrorist activity," or (3) "the organization has engaged or engages in terrorism."[2] 18 U.S.C. § 2339B(a)(1).

## II. DISCUSSION

### A. Section 2339B Is Unconstitutionally Vague.

The term "personnel" contained in the material support statute is impermissibly vague in violation of the due process clause of the Fifth Amendment. The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This guarantee is violated when "a criminal law [is] so vague that it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015) (citation omitted). "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." Id. at 2556-57 (quotations omitted).

---

[2] On May 14, 2014, the United States Department of State issued a press release regarding the terrorist designation of groups operating in Syria. Al-Qa'ida in Iraq (AQI) was previously designated as an FTO by the Department of State. AQI was established in 2004 by Abu Mus'ab al-Zarqawi (who later the same year pledged his group's allegiance to Bin Laden). Al-Qa'ida in Iraq (AQI), The National Counterterrorism Center, http://www.nctc.gov/site/groups/aqi.html (last visited Nov. 6, 2015). Al-Zarqawi was killed in June 2006. Id. The new leader of AQI, Abu Ayyub al-Masri, announced in October 2006 the formation of the Islamic State of Iraq. Id. AQI's next leader, Abu Bakr al-Baghdadi, declared in April 2013 that the group would be publicly known as ISIS. Id. As explained, supra, in June 2014, Abu Bakr al-Baghdadi declared that he "stood at the head of a Caliphate, a Muslim state . . . ." Rebecca Collard, What We Have Learned Since ISIS Declared a Caliphate One Year Ago, Time (June 25, 2015), http://time.com/3933568/isis-caliphate-one-year/. The Department of State's statement of May 14, 2014, amended the designation of AQI and added the "alias Islamic State of Iraq and the Levant (ISIL) as its primary name[.]" Press Release, U.S. Department of State, Terrorist Designations of Groups Operating in Syria (May 14, 2014), http://www.state.gov/r/pa/prs/ps/2014/05/226067.htm.

4

"A statute may be vague either as applied to the conduct at issue or on its face." United States v. Hashmi, No. 06-442, 2009 U.S. Dist. LEXIS 108321, at *23 (S.D.N.Y. Nov. 17, 2009). With respect to an as-applied challenge, the Court "consider[s] whether a statute is vague as applied to the particular facts at issue . . . ." Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2719 (2010) ("HLP"). A statute characterized by vagueness "is particularly troubling when First Amendment rights are involved[.]" United States v. Taleb-Jedi, 566 F. Supp. 2d 157, 180 (E.D.N.Y. 2008). As a result, the Supreme Court has explained that "when a statute interferes with the right of free speech or of association, a more stringent vagueness test should apply." However, an individual "whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice." HLR, at 2719.

Ms. Thomas has been charged with attempting to provide material support and resources, "including . . . herself as personnel, to a foreign terrorist organization, to wit: the Islamic State of Iraq and the Levant." (Indictment at 1.) Here, the government does not elaborate on the nature of Ms. Thomas's provision of personnel, other than to state that she attempted to provide "herself." Id. As explained above, the provision of material support must be under an FTO's "direction or control." 18 U.S.C. § 2339B(h). The provision of oneself, therefore, does not violate the material support statute unless the individual is attempting to "work" under the FTO's "direction or control or to organize, manage supervise, or otherwise direct the operation of that organization." Id. In light of the statutory definition of "provision of personnel" and the types of cases prosecuted by the government for the provision or attempted provision of personnel to an FTO, Ms. Thomas did not have a reasonable opportunity to know what conduct fell within the statute's scope.

5

For example, in United States v. Farhane, defendant was charged with providing personnel to Al-Qa'ida. United States v. Farhane, 634 F.3d 127, 132 (2d Cir. 2009). Defendant swore an oath of allegiance to Al-Qa'ida, "offer[ed] to act as a martial arts trainer for al Qaeda in that organization's pursuit of jihad . . . [and] offer[ed] to serve as an on-call doctor for the organization, standing ready to treat wounded mujahideen in Saudi Arabia . . . ." Id. at 140-41.[3] As a result, the Second Circuit rejected defendant's vagueness challenge to the term "personnel" because defendant's conduct fell "squarely within the core of this prohibition . . . ." Id.; see also United States v. Shah, 474 F. Supp. 2d 492 (S.D.N.Y. 2007) (holding plain language of material support statute puts doctor on notice that providing medical support to jihadists constitutes provision of personnel).

Similarly, in United States v. Warsame, the district court rejected defendant's argument that the term "personnel" was unconstitutionally vague as applied to his conduct. United States v. Warsame, 537 F. Supp. 2d 1005, 1020 (D. Minn. 2008). In Warsame, the government alleged that defendant "voluntarily participated in an Al Qaeda training camp in Afghanistan[.]" Id. at 1018. The court concluded that the term "personnel" gave defendant "adequate notice of the criminality of attending an Al Qaeda training camp." Id.

The Court in United States v. Marzook reached a similar conclusion, rejecting a vagueness claim where defendant recruited an individual to "join Hamas and make trips to the Middle East in order to conduct Hamas activities[,] directed an individual to travel to Israel and the West Bank, and "scouted specific locations in and around Jerusalem for suitability as targets for [H]amas terrorist attacks." United States v. Marzook, 383 F. Supp. 2d 1056, 1066 (N.D. Ill. 2005).

---

[3] The Arabic word, "al Qaeda" is often transliterated as "Al-Qa'ida" and both are used interchangeably. The Arabic word, "mujahideen" means Muslim guerilla fighter, particularly in the Middle East.

These examples of personnel are consistent with the "core concerns" underlying the material support statute – "international terrorism." United States v. Ahmed, No. 12-CR-661, 2015 U.S. Dist. LEXIS, at *40 (E.D.N.Y. Mar. 24, 2015) (citations omitted). These defendants engaged in "'hard core' conduct permitting [them] to know full well in advance that such conduct would run afoul of § 2339B." Shah, 474 F. Supp. 2d at 500 n.5. Such is not the case here.

Ms. Thomas maintained an active presence on social media. She used her social media platforms to discuss religion, support Muslims, and speak positively of jihad and jihadi fighters. But this type of speech is protected by the First Amendment. HLP, 130 S. Ct. at 2722-23 (stating that individuals "may speak and write freely about [FTOs]"). Ms. Thomas is free to "'say anything [she] wish[es] on any topic,' including terrorism." Farhane, 643 F.3d at 137 (quoting HLP, 130 S. Ct. at 2722-23). Indeed, the material support statute expressly carves out an important exception for independent advocacy: "Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction or control." 18 U.S.C. § 2339B(h).

Ms. Thomas also allegedly associated with members of an FTO.[4] She allegedly conversed about marriage and possible marriage to a jihad fighter. Such conversations would not have put her on notice that she was in violation of the material support statute because, as noted above, one does not violate the statute merely by speaking of jihad or allegedly associating with members of an FTO. See HLP, 561 U.S. at 18, 25 (explaining that § 2339B "does not criminalize mere membership in a designated" FTO). Moreover, marriage to a militant fighter, without more, is not illegal in itself. Cf. Elias Groll, Jihadi Love: Does U.S. Law Prohibit Marrying an ISIS Fighter?, Foreign Policy (Jan. 14, 2015, 4:38 PM),

---

[4] It is unclear at this time if the individuals she spoke to were actually members of an FTO.

7

http://foreignpolicy.com/2015/01/14/jihadi_love_does_us_law_prohibit_marrying_an_isis_fighter/. That something "more" could come in the form of a "shared bank account whose funds might be channeled to the group" or the "firing [of] automatic weapons." Id. The statute is vague, however, on whether one's mere presence in the foreign territory constitutes personnel. Is a woman who marries an ISIS fighter automatically under her husband's direction and control?

Similarly, the statute is vague regarding whether the attempt to travel to territory occupied by an FTO constitutes making personnel available to ISIS. Ms. Thomas attempted to travel to Barcelona, Spain. The government contends that her true destination was Turkey and, ultimately, to cross the border into Syria. (Compl. ¶¶ 36-39.) Assuming that allegation is true – which the defense does not concede – the mere act of traveling to the Islamic State does not satisfy the elements of the material support statute. See United States v. Abu-Jihaad, 600 F. Supp.2d 362, 401 (D. Conn. 2009) (granting judgment of acquittal and holding that the submission of classified information to Jihadi website does not, without more, constitute "personnel" as defined by § 2339A).

Moreover, the statute is unclear regarding what constitutes "direction or control" when an FTO controls a large territory, such as the Levant. Is control by the FTO inherent in an individual's mere voluntary presence or attempted presence in occupied FTO territory? If that question is answered in the affirmative, mere presence and association with a terrorist group is effectively transformed into material support. Thus, the transformation of Ms. Thomas's alleged mere association with members of an FTO in FTO-occupied territory into conduct criminalizes protected First Amendment activity. Since the material support statute is aimed at conduct, not speech, association, or independent activity, Ms. Thomas's actions were not clearly proscribed and § 2339B is impermissibly vague as applied to her activities.

### B. Section 2339 Violates the Freedoms of Association and Speech Guaranteed By the First Amendment.

The First Amendment unequivocally states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . ." U.S. Const. amend. I.

#### i. Freedom of Association

As a result of the Constitution's command, "along with the Amendment's protections of free exercise, assembly, and petition, [there is an] implie[d] . . . 'right to associate for the purpose of engaging in those activities protected by the First Amendment.'" Hasmi, 2009 U.S. Dist. LEXIS 108321, at *28 (S.D.N.Y. Nov. 18, 2009) (quoting Roberts v. United States Jay-cees, 468 U.S. 609, 618 (1984)). In violation of that command, the material support statute criminalizes mere association with an FTO.

In this case, the government focuses on Ms. Thomas's alleged attempt to travel to the Levant to "join, fight with, and martyr herself on behalf of ISIL." (Compl. ¶¶ 8, 11, 29-32, 35-39.) At the outset, there are no facts in the Complaint alleging that Ms. Thomas attempted to "join, fight with, and martyr herself on behalf of ISIL," much less at the "direction or control" of ISIL.[5] Again, the material support statute "does not prohibit being a member of one of the designated groups or vigorously promoting and supporting the political goals of the group . . . ." HLP, 130 S. Ct. at 2730. Thus, we are left with Ms. Thomas's alleged attempt to travel to the Levant and the issue of whether this alleged attempt constitutes material support, which is all § 2339B prohibits. Id. It does not.

---

[5] Moreover, with respect to an alleged attempt to join an FTO and/or become a member of an FTO, § 2339B does not prohibit such an act. See HLP, 130 S. Ct. at 273 (observing that the material support statute "does not prevent [defendants] from becoming members of the [FTO] or impose any sanction on them for doing so" (quotation omitted)).

First, mere travel to the Levant does not satisfy the elements of the material support statute, specifically the provision of personnel.   Second, the region comprising the Caliphate is separate and distinct from the terrorist organization . Although the leader of ISIS has declared it a Caliphate, Collard, supra, note 2 , seeking to control the territory in the "region spanning from southern Turkey to Egypt and including Syria, Lebanon, Israel, the Palestinian territories and Jordan,  Laub and Masters, supra, note 1, this designation is self-proclaimed and ISIS is in the midst of its battle for control. Even if ISIS is deemed to control a wide swath of territory in the Levant, Ms. Thomas's alleged travel to the region controlled by ISIS cannot constitute working under the direction or control of the FTO.  Such a conclusion would impermissibly transform mere presence and mere association into material support, in violation of First Amendment protections.

The argument that the material support statute violates the freedom of association guaranteed by the First Amendment has been rejected by other courts. In HLP, advocacy groups claimed the material support statute was unconstitutional because it prevented them from "facilitate[ing] only the lawful, nonviolent purposes of two [FTOs]." HLP, 130 S. Ct. at 2712. The Supreme Court held that the statute did not violate the First Amendment, as applied to the specific activities plaintiffs sought to pursue. Id.  In doing so, the Supreme Court agreed with the Ninth Circuit's rejection of plaintiffs' freedom of association claims on the grounds § 2339 prohibits material support only.  But this case is distinguishable from the facts of HLP.  The government seeks to characterize Ms. Thomas's alleged attempted travel to ISIS-controlled territory as her submission to the FTOs direction or control.  This characterization must be rejected.

The argument that the material support statute prohibits "mere membership" and "punish[es] individuals for advocating or sympathizing with the goals of [FTOs]" has been rejected in the lower courts as well. See Taleb-Jedi, 566 F. Supp. 2d at 175 (citations omitted). In Taleb-Jedi, defendant was charged with "providing material support and resources, including herself, to a terrorist organization." Id. at 162. Specifically, the government alleged that defendant was the "registered foreign agent for the People's Mojahedin Organization of Iran (the 'PMOI')." Id. at 161. In this capacity, she served as a press officer for the organization and "traveled to a PMOI community in Iraq known as Camp Ashraf." Id. As a supporter of PMOI, she "taught English classes, translated documents and was assigned to the Political Department at Ashraf." Id. at 162. The district court disagreed that § 2339B violated Taleb-Jedi's First Amendment rights. Id. at 177. The court found that defendant's conduct did not constitute "pure membership and advocacy." Id. at 176. Rather, defendant "acted as an employee of [the FTO] and engaged in work . . . ." Id.

Because Ms. Thomas's alleged acts are distinguishable from the prior material support cases rejecting First Amendment arguments, this Court need not "disagree with these other decisions" in order to support her First Amendment claims. Id. The Taleb-Jedi court observed:

> The major distinction between the cases decided by the Courts of Appeals . . . and the one before this Court is that those cases involved more ostensible conduct, such as the provision of currency to the FTOs. Other district court cases have also involved facts that are arguably more serious and conduct that poses a greater threat to national security than what is at issue here.

Id. Ms. Thomas's conduct is even less "ostensible" than the acts described above. She was not, among other things an employee of an FTO; she did not pledge an oath to an FTO, she was not a member of an FTO, nor did she offer to supply her vocational services or expertise to an FTO. She allegedly sought to independently advocate the goals of an FTO and attempt to associate

11

with its members. Neither of those activities are prohibited by statute. Therefore, permitting this indictment to stand constitutes a violation of Ms. Thomas's First Amendment right of association.

### ii. Freedom of Speech

Ms. Thomas asserts that the material support statute prohibits her political and religious speech. The government alleges that Ms. Thomas tweeted and retweeted[6] pro-ISIS content via Twitter. (Compl. ¶¶ 9-10 14-24.) The government further alleges that Ms. Thomas conversed and/or associated with alleged members of ISIS, jihadi fighters, and others. (Compl. ¶¶ 11-13, 25-29.) Regardless of the generally-held view of ISIS, or how repugnant its tactics are perceived to be, Ms. Thomas's activities and beliefs are protected by the First Amendment. The material support statute is designed to punish conduct, not speech. As such, one does not violate the statute by merely speaking of jihad or allegedly associating with members of an FTO. See HLP, 561 U.S. at 18, 25 (explaining that § 2339B "does not criminalize mere membership in a designated" FTO, and that under the statute individuals "may say anything they wish on any topic").[7]

---

[6] "Twitter is an online social networking service that enables users to send and read short 140-character messages called 'tweets.'" Wikipedia, https://en.wikipedia.org/wiki/Twitter (last visited Nov. 12, 2015). "A Retweet is a re-posting of someone else's Tweet." Twitter, https://support.twitter.com/articles/77606# (last visited Nov. 12, 2015).
[7] Even in cases where the district court rejects at the pre-trial stage a vagueness challenge to the term personnel under the material support statute, the government's evidence still may be insufficient to reach a jury. See Taleb-Jedi, 566 F. Supp. 2d at 183 (noting "if the proof at trial shows only that defendant participated in the [FTO] through mere membership . . . it may well be insufficient to reach a jury or sustain a guilty verdict" and "it is not clear at this point how teaching English or translating documents, without knowing more factual specifics, would constitute the provision of 'personnel' under § 2339B"); Warsame, 537 F. Supp. 2d at 1018 ("[A]llegations that Warsame remained in communications with Al Qaeda associates after he returned to Canada are not sufficient, without more, to survive a vagueness challenge . . . [S]uch evidence . . . would be inadmissible as evidence of guilt unless the prosecution ties such evidence to additional conduct that would constitute provision of 'personnel' under the statute").

Courts apply intermediate-scrutiny[8] when a statute is "directed not at speech but rather at conduct . . . ." Taleb-Jedi, 566 F. Supp. 2d at 176-77. A more "rigorous scrutiny" is required in this case, however, because the material support statute, as applied here, is directed at Ms. Thomas's speech, not her conduct, HLP, 130 S. Ct. at 2724 (applying more rigorous standard where "generally applicable law was directed at[individual] because of what his speech communicated) (citation omitted). In analyzing the free speech claim made in HLP, the Supreme Court stated that "[t]he law here may be described as directed at conduct . . ., but as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message." Id. Such is the case here. The government arguably is using § 2339B against Ms. Thomas because it disagrees with the content of her speech. Furthermore, Ms. Thomas's speech is just that – speech. Her words do not rise to the level of material support because her speech cannot be construed as the attempted provision of personnel since she did not attempt to offer herself to "work under [ISIS's] direction or control." 18 U.S.C. § 2339B(h). At most, she used her speech independently of ISIS "to advance its goals or objectives[,]" which is entirely permissible under the material support statute. Id. ("Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.").

Although the Supreme Court rejected plaintiff's free speech claims asserted in HLP, the court left the door open for future speech and advocacy challenges to § 2339B:

> All this is not to say that any future applications of the material-support statute to speech or advocacy will survive First Amendment scrutiny. It is also not to say that any other statute relating to speech and terrorism

---

[8] Under intermediate-scrutiny, a statute is valid if: "(1) it is within the constitutional power of the Government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction of alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." Hashmi, 2009 U.S. Dist. LEXIS 108321, at *30 (citation omitted).

> would satisfy the First Amendment. In particular, we in no way suggest that a regulation of independent speech would pass constitutional muster, even if the Government were to show that such speech benefits foreign terrorist organizations.

HLP, 130 S. Ct. at 2730. In light of the arguments set forth above, the material support statute does not survive First Amendment scrutiny in this case.

### C. Section 2339B Is Overbroad.[9]

Section 2339B is overbroad and violates the First Amendment because it "sweeps within its scope a broad array of protected [F]irst Amendment rights of association" and speech. Marzook, 383 F. Supp. 2d at 1060 (quotation omitted). As prosecuted in this case, the material support statute improperly criminalizes the alleged acts of advocating the cause of an FTO, attempted travel to FTO-controlled territory, association with members of an FTO, attempted travel to associate with members of an FTO, and/or marriage to a member of an FTO.

"A statute is overbroad if it punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." United States v. Assi, 414 F. Supp. 2d 707, 716 (E.D. Mich. 2006). The overbreadth doctrine is "predicated on the sensitive nature of protected expression: persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression." Marzook, 383 F. Supp. 2d at 1061 (citation omitted). "A finding of overbreadth invalidates all enforcement of a challenged law, unless it can be saved by a limited construction." Farhane, 634 F.3d at 136 (citation omitted). In light of this "strong medicine," the party raising the overbreadth challenge is required to demonstrate "substantial infringement of speech." Id. (citation omitted); see also Marzook, 383 F. Supp. 2d at 1062 (explaining that "a

---

[9] Even if the Court determines that Ms. Thomas's conduct is clearly proscribed by the material support statute, she still may have a valid overbreadth claim. HLP, 130 S. Ct. at 2719.

statute is not violative of the overbreadth doctrine unless the law, <u>taken as a whole</u>, is substantially overbroad judged in relation to its plainly legitimate sweep" (citations omitted)).

Section 2339B conceivably could, among other things: (1) apply to an independent advocate's right to travel to territory occupied by an FTO; (2) infringe upon the right to marry a member of ISIL; (3) prohibit travel of a journalist, supportive of the cause of ISIL, to FTO-controlled lands for legitimate media coverage; (4) criminalize friendship with an FTO member, where the nature of the relationship involved a healthy discourse on the two friends' open support of ISIL; and (5) violate an individual's right to say anything on the topic of ISIL. Therefore, the material support statute is overbroad because it criminalizes a substantial amount protected First Amendment conduct.

**D.    The Indictment Fails to Allege Essential Elements of Offense Under Section 2339B.**

The indictment in this case does not allege that Ms. Thomas knew that ISIL was a designated terrorist organization. The Sixth Amendment requires that the accused shall be "informed of the nature and cause of the accusation" against her. U.S. Const. amend. VI. "Rule 7 of the Federal Rules of Criminal Procedure puts this notice requirement into effect. . . ." <u>Hashmi</u>, 2009 U.S. Dist. LEXIS 108321, at *13 (citing Fed. R. Crim. P. 7(c)). Federal Rule of Criminal Procedure 7(c) requires that the indictment set forth a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); <u>see also</u> <u>United States v. Stock</u>, 728 F.3d 287, 292 (3d Cir. 2013). "An indictment is facially valid if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend and, second enables a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>Ahmed</u>, 2015 U.S. Dist. LEXIS 36973, at *49-*50 (quotations and citations omitted). Therefore, "an indictment

15

need only allege that a defendant committed a federal criminal offense at a stated time and place in terms of plainly tracking the language of the relevant statute." Id. (quotation omitted). The indictment in this case fails to meet this minimal standard.

The material support statute states:

> Unlawful conduct. Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization . . ., that the organization has engaged or engages in terrorist activity . . ., or that the organization has engaged or engages in terrorism . . . .

18 U.S.C. § 2339B(a)(1). In light of this language, the indictment fails to allege that Ms. Thomas knowingly provided material support and resources to a <u>known</u> foreign terrorist organization. Rather, it merely alleges that

> [f]rom in or about August 2013, through in or about March 2015, in the Eastern District of Pennsylvania, the defendant . . . knowingly and intentionally attempted to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), including THOMAS herself as personnel, <u>to a foreign terrorist organization</u>, to wit: the Islamic State of Iraq and the Levant. In violation of Title 18, United States Code, Section 2339B.

(Indictment at 1) (emphasis added).[10] This allegation is insufficient. See Hashmi, 2009 U.S.Dist. LEXIS 108321, at *12 n.6 (government subsequently filed indictment specifically alleging that defendant "knew al Qaeda was specifically designated as an FTO"); but see Ahmed, 2015 U.S. Dist. LEXIS 36973, at*55-*56 (finding sufficient an indictment utilizing language similar to that used in the instant matter). As a result, it is unclear whether the grand jury was properly instructed on the law.

---

[10] The indictment also is partially defective because the time span alleged in the indictment (August 2013 through March 2015) predates the Department of State's May 14, 2014, designation of ISIL as an FTO. The Department of State's May 2014 designation amended its prior designation of AQI as an FTO, but ISIL was not officially designated an FTO until May 2014.

**WHEREFORE**, Ms. Thomas moves the Court to issue an order dismissing the indictment in this case.

Respectfully submitted,


/s/ *Kathleen M. Gaughan*
KATHLEEN M. GAUGHAN
Assistant Federal Defender

ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit

# **CERTIFICATE OF SERVICE**

      I, Kathleen M. Gaughan, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a copy of the Defendant's Motion to Dismiss the Indictment and memorandum of law in support thereof, by electronic notification or hand delivery to her office, upon Jennifer A. Williams, Assistant United States Attorney, office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.


                                            /s/ Kathleen M. Gaughan
                                            KATHLEEN M. GAUGHAN
                                            Assistant Federal Defender


DATE:        November 16, 2015