**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO.   15-171** |
| **KEONNA THOMAS,** | : | |
| a/k/a "Fatayat Al Khilafah," | | |
| a/k/a "YoungLioness" | : | |

# **O R D E R**

AND NOW, this         day of                         , 2015, upon consideration of the Defendant's Motion to Dismiss the Indictment and the government's response thereto, it is hereby ORDERED AND DECREED that the motion is DENIED.

BY THE COURT:

_____
HONORABLE MICHAEL M. BAYLSON
*Judge, United States District Court*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | CRIMINAL NO. 15-171 |
| **KEONNA THOMAS,**<br>    a/k/a "Fatayat Al Khilafah,"<br>    a/k/a "YoungLioness" | :<br><br>: | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

The United States of America, by its counsel Zane David Memeger, the United States Attorney for the Eastern District of Pennsylvania, Jennifer Arbittier Williams, Assistant United States Attorney for that district, and Paul Casey, Trial Attorney for the Department of Justice, Counterterrorism Section, hereby files its Response in Opposition to Defendant's Motion to Dismiss the Indictment.

**A.     Background**

On April 23, 2015, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment charging that defendant Keonna Thomas, "[f]rom in or about August 2013, through in or about March 2015, . . . knowingly and intentionally attempted to provide material support and resources . . , including THOMAS herself as personnel, to a foreign terrorist organization, to wit: the Islamic State of Iraq and the Levant" (ISIL), in violation of 18 U.S.C. § 2339B.[1]

---

[1] Three weeks earlier, the government had charged Keonna Thomas in a Criminal Complaint with the same violation. The Affidavit attached to the Complaint alleged in further detail that:

- Thomas used social media to express her personal desire to fight and martyr herself for ISIL, and to urge others to commit acts in support of and donate money to ISIL;

The material support statute charged in this case, 18 U.S.C. § 2339B, states in relevant part as follows:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both . . . . To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

The term "material support or resources" is defined to include "any property . . . or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, *personnel (1 or more individuals who may be or include oneself)*, and transportation, except medicine or religious

---

- Thomas exchanged multiple communications with a known Somalia-based violent jihadi fighter (CC#1), advising that she should be "able to travel" and "should be getting some money soon." Thomas further advised CC#1 that she had "moves to make" and planned to "leave the land of kufr [non-believers]."

- Thomas repeatedly expressed concern about communicating online, because it might "draw attention" to her and "mess my plans."

- Thomas exchanged numerous communications with a known overseas ISIL fighter (CC#2), who advised Thomas that he had arrived in Syria, that his presence there was a blessing, and that he was surrounded by "the future generation of mujahidin [violent jihadi fighters] who love Dawla [ISIL]." In February 2015, CC#2 sent an electronic communication to Thomas stating, "U probably want to do Istishadee [martyrdom operations] with me." In response, Thomas stated, "that would be amazing. . . . a girl can only wish." CC#2 responded, "I can make that wish come true." Thomas also sought help from CC#2 regarding "routes" and her "travel plan."

- Thomas had never before owned a United States Passport nor traveled outside of the United States. But in February and March 2015, Thomas submitted an application for a United States Passport, conducted online research into "buses from Barcelona to Istanbul," purchased a last-minute flight to Barcelona, and purchased an electronic visa to Turkey. Turkey is known to be the most common and most direct transit point for individuals traveling from locations in Europe who are seeking to enter Syria and join ISIL, and the route from Turkey to Syria is recommended by ISIL itself.

materials." 18 U.S.C. 2339A(b) (emphasis added); 18 U.S.C. § 2339B(g)(4) (incorporating 2339A(b) by reference).

With regard to material support in the form of "personnel," the statute provides further clarification as follows:

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2339B(h) ("Provision of personnel").

### B. The Defendant's Motion to Dismiss the Indictment is Without Merit.

Thomas contends that this indictment should be dismissed because 18 U.S.C. § 2339B is unconstitutionally vague and overbroad, and because it infringes upon her First Amendment rights to free speech and association. Thomas also argues that the indictment should be dismissed because it fails to state the essential elements of the offense. For the reasons set forth below, Thomas's motion should be denied.

#### 1. The Material Support Statute 18 U.S.C. § 2339B Is Not Unconstitutional.

Thomas argues that 18 U.S.C. § 2339B is unconstitutional because: (a) it is unconstitutionally vague as applied to her case; (b) it is unconstitutionally overbroad; and (c) it unconstitutionally infringes upon her First Amendment rights to free speech and association. As explained below, these arguments have repeatedly been raised by other terrorism defendants and rejected by courts around the country, including most notably by the U.S. Supreme Court in its recent decision in Holder v. Humanitarian Law Project, 561 U.S. 1 (2010) (§ 2339B is not

3

unconstitutionally vague and does not violate First Amendment rights to free speech and association).

### a. 18 U.S.C. § 2339B is Not Void for Vagueness.

A criminal statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Holder, 561 U.S. at 18 (quoting United States v. Williams, 553 U.S. 285, 304 (2008)); Johnson v. United States, 135 S. Ct. 2651, 2556 (2015) (convicting someone under an unconstitutionally vague statute violates a person's Fifth Amendment right to due process of law). For example, the Supreme Court in the past has "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent' – wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." Holder, 561 U.S. at 20 (quoting Williams, 553 U.S. at 306).

Thomas argues that § 2339B is unconstitutionally vague as applied to her case, because the allegation that she attempted to supply ISIL "herself as personnel" fails adequately to notify her of the conduct alleged to have violated the statute. This argument has been raised many times by other § 2339B defendants, always unsuccessfully, because the tern "personnel" is clearly and specifically defined by the statute (requiring "a person knowingly to work under a terrorist organization's direction or control"). 18 U.S.C. § 2339B(h); see Holder, 561 U.S. at 23 (§ 2339B clearly defines the scope of "personnel" and is not void for vagueness); United States v. Farhane, 634 F.3d 127, 140 (2d Cir. 2011) (§ 2339B is not void for vagueness, because the term "personnel" is clearly defined and clearly applies to the defendant's conduct). Thus, the statute

is not vague or standardless as applied to Thomas's case,[2] and her argument is without merit.[3]

### b. <u>The Material Support Statute is Not Unconstitutionally Overbroad.</u>

A criminal law is unconstitutionally overbroad if it prohibits a substantial amount of protected speech. <u>United States v. Williams</u>, 553 U.S. 285, 292 (2008); <u>King v. Governor of State of N.J.</u>, 767 F.3d 216, 241 (3d Cir. 2014). Unlike vagueness, which implicates Fifth Amendment due process rights, overbreadth is concerned with the inhibition of First Amendment-protected speech, which must be balanced against the protection of society that results from properly designating as criminal certain types of behavior. In order to maintain an appropriate balance, the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." <u>Williams</u>, 553 U.S. at 292 (citations omitted); <u>Virginia v. Hicks</u>, 539 U.S. 113, 118-19 (2003) (statute is overbroad only if it "punishes a substantial amount of protected speech, judged in relation to the statute's plainly legitimate sweep"); <u>United States v. Farhane</u>, 634 F.3d 127, 136-37 (2d Cir. 2011) ("A finding of overbreadth invalidates *all* enforcement of a

---

[2] A vagueness challenge must be examined as applied to the particular facts at issue, "for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" <u>Holder</u>, 561 U.S. at 18-19 (quoting <u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 494-95 (1982)).

[3] Thomas argues that the her case is different from others in which the term "personnel" was considered, because ISIL's control of significant territory renders it particularly difficult to understand what would constitute work under its "direction or control" (and whether mere presence in the Levant would be criminalized by the charging statute). Def. Memo at 8. But this ignores the clear language of the statute, which explicitly excludes from its reach individuals who act "entirely independently of the foreign terrorist organization." 18 U.S.C. § 2339B(h). This also ignores the reality that ISIL is not unique in its control of territory. For example, al Shabaab controlled most of Somalia for many years. Sig Jarle Hansen, <u>Al Shabaab in Somalia</u> (Oxford University Press 2013) pages 83-92 (describing al Shabaab governance of the areas it controlled). Hamas is the <u>de facto</u> government of the Gaza Strip, having prevailed in Palestinian elections held in January of 2006. Beverly Milton-Edwards and Stephen Farrell, <u>Hamas</u> (Polity Press 2010), pages 1-4. And Hezbollah actively participates in Lebanese politics. Augustus Richard Norton, <u>Hezbollah</u> (Princeton University Press 2007), pages 98-105 (describing Hezbollah's 1992 decision to enter Lebanese parliamentary elections).

5

challenged law, unless it can be saved by a limiting construction. Mindful that such relief is 'strong medicine,' the law rigorously enforces the burden on the challenging party to demonstrate 'substantial' infringement of speech.") (quoting Williams, 533 U.S. at 292).

Thomas argues that § 2339B is overbroad because it criminalizes a broad array of protected First Amendment activities, including an independent advocate's attempt to travel to territory occupied by ISIL, an individual's attempt to marry a member of ISIL, and a journalist's effort to travel to terrorist-controlled lands for legitimate media coverage. This argument is without merit, however, because 18 U.S.C. § 2339B legitimately punishes terrorism-supporting conduct and has only a minimal impact (if any) on protected speech. See Hicks, 539 U.S. at 124 (overbreadth challenge will "rarely" succeed if the statute is addressed predominantly to conduct rather than speech). In fact, 18 U.S.C. § 2339B leaves persons free to "say anything they wish on any topic," including terrorism. Holder, 561 U.S. at 25-26. Thus, courts have consistently rejected this argument. See United States v. Hammoud, 381 F.3d 316 (4th Cir. 2004) (§ 2339B is not unconstitutionally overbroad); United States v. Hashmi, 2009 WL 4042841, at *10 (S.D.N.Y. Nov. 18, 2009) (§ 2339B is not overbroad because, "[e]ven it were shown that the law affects some activity that otherwise receives First Amendment protection, Hashmi does not show that these potential interferences are substantial in view of the law's legitimate purpose); United States v. Marzook, 383 F. Supp.2d 1056, 1062 (N.D. Ill. 2005) ("Section 2339B is not unconstitutionally overbroad); United States v. Lindh, 212 F. Supp.2d 541, 573 (E.D. Va. 2002) (§ 2339B is not overbroad, because defendant fails to show that its prohibition "on the provision of 'personnel' to foreign terrorist organizations reaches a substantial amount of constitutionally protected activity") .

For example, the Fourth Circuit considered and rejected a nearly identical argument in United States v. Hammoud, 381 F.3d 316, 330 (4th Cir. 2004). In Hammoud, the defendant argued § 2339B is overbroad because it prohibits mere association with a terrorist organization and prohibits "such plainly legitimate actions as teaching members of the [organization] how to apply for grants to further the organization's humanitarian aims." Id. The Fourth Circuit rejected this argument because, while "it may be true that the material support prohibition of § 2339B encompasses some forms of expression that are entitled to First Amendment protection . . . , Hammoud has utterly failed to demonstrate, however, that any overbreadth is substantial in relation to the legitimate reach of § 2339B. Id.

A defendant bears the burden to demonstrate that substantial overbreadth exists, and Thomas cannot satisfy this burden.[4] Id. (defendant bears the burden to demonstrate substantial overbreadth).

        c. **The Material Support Statute Does Not Infringe Upon Thomas's First Amendment Freedoms of Association and Speech.**

Thomas also argues that the material support statute is unconstitutional because it criminalizes free association and free speech protected by the First Amendment. In support of this argument, Thomas claims that she is being prosecuted for tweeting and re-tweeting pro-ISIL content (at most using her speech independently of ISIS "to advance its goals or objectives"), and for allegedly attempting to travel to territory controlled by ISIL where she might associate

---

[4] It must also be noted that Thomas is not alleged to have engaged in pure speech. Rather, the indictment charges Thomas with conduct in the form of attempting to provide herself to ISIL as personnel. Considering that the Supreme Court in Holder upheld § 2339B against a challenge by individuals who were indeed engaged in providing material support in the form of speech (providing expert guidance to a terrorist organization), Thomas cannot succeed in her claim that § 2339B is unconstitutionally overbroad in her case. Holder, 561 U.S. 1.

7

with ISIL members. Def. Memo. at 10, 13.

Every Court to have considered the First Amendment arguments raised by Thomas – including the U.S. Supreme Court – has rejected them, concluding that § 2339B "does not prohibit mere association or free speech; it prohibits the conduct of providing material support to a designated FTO." Hammoud, 381 F.3d at 329; see Holder, 561 U.S. at 39 (the statute does not penalize free speech or mere association , but rather "the act of giving material support"); Farhane, 634 F.3d at 138 (section 2339B does not prohibit free speech or simple membership in a terrorist organization., but rather "the knowing provision of material support to a known terrorist organization"); United States v. Hashmi, 2009 WL 4042841 (S.D.N.Y. Nov. 18, 2009) (same); United States v. Taleb-Jedi, 566 F. Supp.2d 157 (E.D.N.Y. July 23, 2008) (same); United States v. Marzook, 383 F. Supp.2d 1056 (N.D. Ill. Aug. 22, 2005) (same); United States v. Lindh, 212 F. Supp.2d 541 (E.D. Va. 2002) (same).

The opinion in United States v. Lindh, 212 F. Supp.2d 541 (E.D. Va. 2002), is particularly instructive because the defendant Lindh raised free speech and association arguments very similar to those raised by Thomas. In rejecting these arguments, the Lindh court stated:

> Lindh maintains that providing "personnel" to . . . al Qaeda could in certain instances amount to nothing more than the mere act of being physically present among members of a designated organization, obtaining information and training from such members, or simply being a member. Put differently, according to Lindh, allowing a prosecution under Section 2339B for providing "personnel" to a terrorist organization presents a constitutionally unacceptable risk that a mere bystander, sympathizer, or passive member will be convicted on the basis of association alone. This argument founders on the plain meaning of the term "personnel" . . . . One who is merely present with other members of the organization, but is not under the organization's direction and control, is not part of the organization's "personnel."

Id. at 472. Similarly, Thomas's argument fails because § 2339B criminalizes the provision of

8

"personnel," and not mere association or speech. Holy Land Found. For Relief and Development v. Ashcroft, 333 F.3d 156, 163 (D.C. Cir. 2003) ("There is no First Amendment right or any other constitutional right to support terrorists").

It is true that § 2339B has a broad reach, and intentionally so. When passing the statute, Congress declared that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that *any contribution to such an organization* facilitates that conduct." See Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), § 301(a)(7) (emphasis added), 110 Stat. 1247, note following 18 U.S.C. § 2339B (Findings and Purpose), quoted in Holder, 561 U.S. at 29. In fact, Congress removed an exception for humanitarian assistance, thus demonstrating that even ostensibly peaceful aid was concluded to have harmful effects. While recognizing the intentionally broad and legitimate reach of the statute, the Supreme Court explained why seemingly benign material support is appropriately criminalized:

> "Material support" is a valuable resource by definition. Such support frees up other resources within the organization that may be put to violent ends. It also importantly helps lend legitimacy to foreign terrorist groups – legitimacy that makes it easier for those groups to persist, to recruit members, and to raise funds – all of which facilitate more terrorist attacks. "Terrorist organizations do not maintain *organizational* 'firewalls' that would prevent or deter . . . sharing and commingling of support and benefits." . . . "[I]nvestigators have revealed how terrorist groups systematically conceal their activities behind charitable, social, and political fronts." M. Levitt, Hamas: Politics, Charity, and Terrorism in the Service of Jihad 2-3 (2006). "Indeed, some designated foreign terrorist organizations use social and political components to recruit personnel to carry out terrorist operations, and to provide support to criminal terrorists and their families in aid of such operations.

Holder, 561 U.S. at 30-31. However, despite this broad reach, the statute does not criminalize the mere exercise of free speech and association; it criminalizes the knowing material support of a terrorist organization. Id. Thus, the statute is not unconstitutional. Id.

Finally, to the extent Thomas is arguing (in any of her constitutional arguments)

9

that the government will not be able to prove that she provided material support to ISIL beyond the exercise of free speech and association, this argument is premature and inappropriate for a Motion to Dismiss. "An indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." U.S. v. Huet, 665 F.3d 588, 594-95 (3d Cir. 2012) (emphasis omitted) (quotation omitted). Thus, the government should be given the opportunity to prove at trial that Thomas attempted to provide unlawful material support to ISIL through conduct including her plan and attempt to travel to Syria in order to support, fight with, and martyr herself on behalf of ISIL. However, if at trial the government fails to prove that the defendant attempted to provide material support to ISIL beyond free speech and association, then the jury can reject the case or this Court can dismiss it after the government presents its evidence.[5] Fed. R. Crim. P. 29 ("Motion for a Judgment of Acquittal). See Taleb-Jedi, 566 F. Supp.2d at 168 (rejecting First Amendment challenge to § 2339B, but "should the Government not deliver on its representation of what the evidence will show, and the proof at trial shows mere association, the Government's case may not be allowed to go to the jury or any guilty verdict based on mere association may be set aside").

### 2. The Allegations in the Indictment Are Sufficient

Finally, Thomas argues that the indictment is insufficient and should be dismissed under Federal Rules of Criminal Procedure 7(c) and 12(b), because it fails to allege that Thomas knew ISIL was a designated terrorist organization. Def. Memo at 15. Federal Rule of Criminal Procedure 7 requires that "the indictment or information must be a plain, concise, and

---

[5] The government does intend to use defendant's statements at trial as evidence against her, but this is a use of speech that the Supreme Court and all other courts have upheld against a First Amendment challenge. Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993); United States v. Rahman, 189 F.3d 88, 118 (2d Cir. 1999) (speech may be used as evidence against terrorism defendant).

definite written statement of the essential facts constituting the offense charged." An indictment may be dismissed if it presents a lack of specificity or fails to state an offense, among other reasons. Fed. R. Crim. P. 12(b)(3)(B); United States v. Stock, 728 F.3d 287, 292 (3d Cir. 2013). However, a "district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." Huet, 665 F.3d at 595; United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002).

> The indictment in this case contains a single paragraph charging as follows:
>
> From in or about August 2013, through in or about March 2015, in the Eastern District of Pennsylvania, the defendant KEONNA THOMAS, a/k/a "Fatayat Al Khilafah," a/k/a "YoungLioness," knowingly and intentionally attempted to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), including THOMAS herself as personnel, to a foreign terrorist organization, to wit: the Islamic State of Iraq and the Levant. . . . In violation of Title 18, United States Code, Section 2339B.

Though brief, the indictment contains all of the essential elements of the offense: (a) that Thomas "knowingly and intentionally" attempted to provide material support to a foreign terrorist organization; (b) that such support took the form of personnel including Thomas herself; (c) that such support occurred in the Eastern District of Pennsylvania; (d) that such support occurred from approximately August 2013 through March 2015; and (e) that the foreign terrorist organization was ISIL.

Other terrorism defendants have tried to challenge similar indictments without success, for such indictments have consistently withstood dismissal motions brought under Fed. Rules of Criminal Procedure 7(c) and 12(b). See United States v. Ahmed, 94 F. Supp.3d 394, 424-25 (E.D.N.Y. Mar. 24, 2015) (indictment is sufficient where it states that defendant "knowingly and intentionally" attempted to provide material support to a terrorist organization,

that such support consisted of "currency and personnel," that the terrorist organization was al-Shabaab, that the support occurred within the extraterritorial jurisdiction of the U.S., and that the support occurred between specified approximate dates); Taleb-Jedi, 566 F. Supp.2d at 165 (indictment is sufficient where it charges defendant with knowingly providing material support, where it identifies category of defendant's material support (personnel), where it identifies the approximate dates of the offense, where it identifies the terrorist organization, and where it specifies the location of the offense).

Neither the government nor the defense could identify a single case in which an indictment was found insufficient because it failed to allege that the defendant knew the foreign terrorist organization was a terrorist organization or engaged in terrorism. In fact, the only case counsel could identify in which a § 2339B indictment was found insufficient was United States v. Awan, 459 F. Supp.2d 167, 175 (E.D.N.Y. Oct. 26, 2006), aff'd, 384 Fed. Appx. 9 (2d Cir. June 14, 2010). The indictment in Awan failed to identify the category of the alleged material support, alleging only that the defendant provided "material support" generally. Such is not the case here, for the Thomas indictment does allege a category of material support (personnel).

Defense counsel did identify one case in which the indictment alleged that the defendant knew the terrorist organization was a terrorist organization: United States v. Hashmi, 2009 WL 4042841 at *3-4 (S.D.N.Y. Nov. 18, 2009) (conspiracy count of indictment included as a "part and an object' of the conspiracy that the defendant knew al Qaeda was a designated terrorist organization). However, such language was not relied upon by the Court in upholding the sufficiency of the indictment. To the contrary, the Hashmi court held that the indictment is sufficient because it charges the defendant with "knowingly providing material support or

resources to al Qaeda; it identifies the form of military support as 'currency' and 'military gear'; it specifies the period in which the offense allegedly occurred; it names a destination for that support, namely South Waziristan; and it alleges that Hashmi knew this conduct was unlawful." Id. at *3. The allegation that defendant knew al Qaeda was a terrorist organization was not referenced at all in this section of the opinion and thus appears to have been irrelevant to the court's ultimate decision that the indictment was sufficient.

And more importantly, other indictments which did <u>not</u> contain that added allegation have been challenged and consistently upheld. The opinion in <u>Taleb-Jedi</u>, 566 F. Supp.2d 157 (E.D.N.Y. 2008), is particularly instructive. In <u>Taleb-Jedi</u>, the defendant was charged in an indictment with knowingly "providing material support and resources, 'including personnel (herself),' to the PMOI and its alleged aliases" during a particular time frame, in violation of 18 U.S.C. § 2339B. The defendant challenged the sufficiency of his indictment, and the Court rejected the defendant's motion because "[t]he Indictment here meets the standard for specificity and provides defendant with adequate notice of the charges. It charges defendant with knowingly providing material support and resources, including personnel, to the [designated terrorist organization] and provides the approximate time span and locations of the offense." Id. at 165. See also <u>Ahmed</u>, 94 F. Supp.3d at 424-25 (indictment is sufficient). Thus, a § 2339B indictment must charge a defendant with "knowingly" providing material support and resources, but it need not track the definition of the term that follows in the statute (i.e., knowledge that the organization is designated terrorist organization or that it has engaged in terrorism), contrary to Thomas's argument.

In this case, the indictment appropriately charges that Thomas acted "knowingly

13

and intentionally," which by definition charges Thomas with the requisite mental state. Because this indictment contains all of the essential elements of the offense, and adequately informs Thomas of the charges against her, it is sufficient and should not be dismissed.[6]

### C. Conclusion

WHEREFORE, the government respectfully submits that the Defendant's Motion to Dismiss the Indictment be DENIED in its entirety.

ZANE DAVID MEMEGER
UNITED STATES ATTORNEY


*Jennifer Arbittier Williams*
JENNIFER ARBITTIER WILLIAMS
Assistant United States Attorney

PAUL CASEY
Trial Attorney
Counterterrorism Section
U.S. Department of Justice

---

6 Thomas mentions in a footnote that the indictment is also "partially defective because the time span alleged in the indictment (August 2013 through March 2015) predates the Department of State's May 14, 2014, designation of ISIL as an FTO." This argument misunderstands the Department of State's designation, however. The Secretary of State first designated al-Qaida in Iraq (AQI), then known as Jam'at al Tawhid wa'al-Jihad, as a foreign terrorist organization ("FTO") on October 15, 2004,. Subsequently, on December 17, 2004, the Secretary of State amended the designation to include a number of new aliases, including AQI, which became the prevalent name for the organization. Section 219(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1189(b)(1), authorizes the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, to amend an FTO designation if the Secretary finds, *inter alia*, that the organization has changed its name or adopted a new alias. The FTO designation of AQI was later amended to add new aliases, including ISIL (on May 15, 2014). If the State Department had assessed that a separate organization which previously did not exist had been established, this organization would be designated as a standalone original FTO designation, not as an amendment to an existing FTO package. That did not happen here. Thus, the State Department's public FTO list states that "ISIL (formerly known as AQI)" was designated as an FTO on December 17, 2004: http://www.state.gov/j/ct/rls/other/des/123085.htm.

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Response in Opposition to Defendant's Motion to Dismiss Indictment was served by e-mail on the following defense counsel:

>Kathleen M. Gaughan, Esquire
>Elizabeth L. Toplin, Esquire
>Defender Association Of Philadelphia
>Federal Court Division
>The Curtis Center Building
>601 Walnut Street, Suite 540 West
>Independence Square West
>Philadelphia, PA 19106

*Jennifer Arbittier Williams*
JENNIFER ARBITTIER WILLIAMS
Assistant United States Attorney

Date:    December 10, 2015